## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRYAN GODSEY, individually and as Special Administrator of the Estate of Micheal Ann Godsey, and as next of kin of A.G., a minor, A.G., a minor and A.G., a minor, RICHARD SPARKS, as next of kin of A.S., a minor, | ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. CIV-20-870-F |
| JOHN MITCHELL, individually, KEITH DENTON, individually, DEWAYNE WOOD, individually and in his official capacity as the Chief of Police for the City of Blackwell, CITY OF BLACKWELL, an Oklahoma municipal corporation, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Before the court is the Motion to Dismiss filed by defendant, Dewayne Wood, individually and in his official capacity as the Chief of Police for the City of Blackwell. Doc. no. 17. Plaintiffs have responded to the motion and defendant has replied. Doc. nos. 21 and 24. Upon due consideration of the parties' submissions, the court makes its determination.

I.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 seeking damages arising from the death of Micheal Godsey ("Micheal").  Plaintiffs allege that in May of 2019, the named defendants violated Micheal's rights under the Fourth, Eighth and Fourteenth Amendments.   In addition to seeking damages under § 1983, plaintiffs seek damages under Oklahoma law.   Defendant, DeWayne Wood ("Wood"), sued individually and in his official capacity as Chief of Police for the City of Blackwell, moves, pursuant to Rule 12(b)(6), Fed. R. Civ. P., for dismissal of all claims alleged against him.

II.

In adjudicating a Rule 12(b)(6) dismissal motion, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Waller v. City and County of Denver, 932 F.3d 1277, 1282 (10th Cir. 2019) (quotation omitted).   "However, mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id*. (quotations omitted).   Consequently, in examining plaintiffs' complaint, the court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*. (quotation omitted).   "Stated differently, [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quotation omitted).

Additionally, in § 1983 cases, such as this, "it is particularly important that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [city]." Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) (quotations omitted) (emphasis in original).

In resolving a motion to dismiss based upon qualified immunity, the court must consider "whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Brown, 662 F.3d at 1164.

III.

In their First Amended Complaint, plaintiffs allege the following facts, which are accepted as true and viewed in a light most favorable to plaintiffs. On May 18, 2019, at approximately 11:14 p.m., Bryan Godsey, Micheal's husband, called the Blackwell Police Department seeking emergency assistance for his wife. At that time, Michael was experiencing a mental health crisis. Officers responded to the Godsey residence at approximately 11:16 p.m. Officers did not seek an emergency order of detention for Micheal or take any other action for her welfare or her family's welfare. Prior to May 18, 2019, Micheal had been detained by the Blackwell Police Department at least once for an incident involving a mental health crisis.

The next day, May 19, 2019, Mr. Godsey again called the Blackwell Police Department seeking emergency assistance for his wife. At the time of the call, Micheal was experiencing a mental health crisis. Officers, including defendant, Keith Denton ("Denton"), responded. Denton knew that Micheal suffered from mental illness. Despite receiving information that would support an emergency order of detention, the officers did not seek an emergency order of detention for Micheal or take any other action for her welfare or her family's welfare.

After the officers left, Mr. Godsey contacted Denton alerting him to concerning posts on Michael's Facebook account. He also alerted Denton that he was concerned Micheal was trying to locate a gun in the house. In response to that call, Denton attempted, but was unable, to contact Micheal or her mother, Jackie Randolph ("Randolph"). Denton returned to his patrol duty and did not take any

3

further action to locate Micheal, follow up on her mental health crisis or seek an emergency order of detention for her.

On May 20, 2019 at 2:55 a.m., Tyler Kroger called the Blackwell Police Department to report his car had been rear-ended. He additionally informed officers that his car had been shot at by an adult female driving a white Ford F-150 and that she had proceeded north on Main Street in the City of Blackwell. According to police reports, the female driver was alleged to be Micheal. Afterwards, according to Mr. Kroger, the driver appeared to turn the truck around to come back to him and he got out of his car and ran to a nearby alley. When the driver returned, she asked Mr. Kroger (apparently believing him to be in the vehicle) to roll down his window and asked him multiple times if he was okay before driving off again and leaving the area.

At approximately 3:41 a.m., Denton arrived at the Godsey residence in response to a report of a gunshot. Upon arrival, Denton saw Randolph and stopped to ask if she had heard any gunshots. She advised that Micheal had fired the gun. Thereafter, according to Denton, he observed Micheal pointing a gun in his direction saying, "this isn't real." Micheal then requested the car in the driveway blocking her Ford F-150 be moved. The car was Randolph's vehicle. As Denton began moving to the back of Randolph's vehicle, Micheal fired one shot into the front of the vehicle. Denton moved to the other side of the vehicle and continued to communicate with Micheal.

During the confrontation, Denton was asked by an officer on the radio if he needed medical assistance, and he replied, "not at this time." He did not request other officers as back up.

After several minutes of communication between Micheal and Denton, Micheal put her truck in gear and began to pull forward toward Randolph's vehicle. She was not driving at a fast or high-rate ramming speed. Denton fired one round at

Micheal's truck in an attempt to immobilize it.  Micheal backed up and pulled her truck through the yard to leave the Godsey residence.  Micheal fired two shots at Denton's patrol vehicle, which was located across the street of the Godsey residence. Denton fired two shots at Micheal's vehicle which was driving away from him. Denton's interactions with Micheal lasted approximately six minutes.

After Micheal left the scene, Denton got in his patrol vehicle and pursued her vehicle at a slow speed.  While following Michael, Denton did not discharge his firearm.  In addition, he did not use a precision intervention technique ("P.I.T.") maneuver or any other tactical vehicle intervention.  While driving her vehicle, Micheal did not discharge her firearm or drive in an erratic or dangerous manner. She drove at a slow speed.

After leaving the Godsey residence, Denton radioed dispatch that he was following Micheal and gave his location.  Dispatch alerted defendant, John Mitchell ("Mitchell"), of the situation.  Mitchell sped off in his unmarked vehicle to intercede in the situation.  The only information Mitchell knew was that another officer was in slow pursuit of a vehicle whose driver had previously fired a gun.  Mitchell, driving at a high rate of speed through town, announced over the radio that he had a "long gun" and was going to meet Micheal at Doolin Avenue.

Mitchell parked his vehicle in the lane for oncoming traffic, approximately 200 yards from the intersection of 3rd Street and Doolin Avenue.  As Micheal turned onto Doolin Avenue from 3rd Street, Mitchell fired approximately seven shots from his .223 assault rifle.  Micheal was headed away from Mitchell at the time.  Denton's vehicle was approximately a car length behind Micheal's vehicle.  More than two minutes had lapsed from the time Micheal fired her last shot at Denton's patrol vehicle to the time Mitchell began shooting at her.

After he fired the shots, Mitchell returned to his vehicle.  Mitchell followed Micheal, nearly colliding with Denton's vehicle twice, and began firing at Micheal

through his windshield.  Micheal was not brandishing or firing any weapon, was not speeding, was maintaining her lane of travel, and was stopping at stop signs and traffic lights.  Mitchell radioed that he had shot at the truck, but he did not know if he hit it.  He then fired 11 more shots at Micheal with his rifle.

Micheal turned on her left signal and made a left-hand turn onto 13th Street from Doolin Avenue.  At this point, she had been driving approximately three minutes.  She stopped her vehicle.  Denton came to a stop at an angle in a tactical position.  According to Denton, he planned to see what action, if any, Micheal was going to take and planned to conduct a "felony stop," including taking a defensive position to engage Micheal with verbal commands to get her compliance.  Micheal did not brandish a weapon, make suspicious movements, lower her window, or open her door.

Mitchell exited his car and immediately opened fire with his rifle on Micheal's vehicle.  It was within less than two seconds of Michael stopping.  Denton did not believe it was necessary to engage the vehicle with gun fire, but he did not attempt to intervene or stop Mitchell's firing on Micheal's vehicle.  After Micheal stopped and prior to Mitchell firing, no officer had placed a call for medical or mental health assistance.

While Mitchell continued to fire, Micheal's vehicle slowly began to roll forward until it came to another stop a few feet from where it started rolling. Mitchell continued firing for a total of approximately 17 seconds before switching from his rifle to his handgun.  He fired 8 more seconds with handgun. Denton joined Mitchell in firing at Micheal.

Approximately 28 seconds after opening fire on Micheal while her truck was stopped, Mitchell yelled for everyone to cease fire because Micheal might be down. Mitchell told Denton that he put "about 60 rounds in that dude, man.  Hopefully, she's down."  Approximately 30 seconds later, Mitchell said "I think she's down.

She's not moving.  It slow rolled to a stop."  Three minutes later, officers approached the vehicle.  Once they looked inside, Mitchell yelled that she was agonal and to start an ambulance.

Denton radioed that they "had one down with gunshot wounds."  Mitchell broke in the window with his gun and told the officers to back up and wait for medical.  No officer made any attempt to provide medical assistance to Micheal at that time.

Micheal suffered gunshot wounds to her head and back with injuries to her brain, left lung, heart, and abdominal organs as a result of being shot 10 times by Mitchell or Denton or both.  All 10 shots had been fired from a position behind Micheal.  The injuries were the cause of her death.  She died with a cigarette in her left hand.

In November of 2019, an Oklahoma multicounty grand jury returned an indictment against Mitchell for murder in the second degree, in violation of 21 O.S. § 701.8, or in the alternative, manslaughter in the first degree, in violation of 21 O.S. § 711(3).  Following a preliminary hearing, a state court judge held there was probable cause to believe Mitchell committed the crime of manslaughter in the first degree.

Denton was given transactional immunity from criminal prosecution in exchange for his testimony.

Plaintiffs allege that Mitchell and Denton used excessive force against Micheal in violation of the Fourth Amendment and deliberately disregarded her serious medical needs in violation of the Eighth Amendment and the Fourteenth Amendment.

At all relevant times, Wood was "Blackwell Chief of Police," employed by and working for "Blackwell Police Department and/or the City of Blackwell."  Doc. no. 5, ¶ 5.  Plaintiffs allege he, individually and in his official capacity as the Chief

of Police, ratified Mitchell's and Denton's specific actions, ratified the basis of Mitchell's and Denton's specific actions, determined that Mitchell's and Denton's actions were in accordance with the Blackwell Police Department policies, customs, and practice, and determined that Mitchell's and Denton's actions were in accordance with training provided to them by the Blackwell Police Department. Doc. no. 5, ¶¶ 161-168.  They also alleged that Mitchell and Wood received no form of discipline or reprimand from "Defendant Wood" for use of excessive force.  *Id.* at ¶ 204.

Plaintiffs allege that the "City and/or Wood" (1) had a policy, custom, and procedure of not ensuring that officers like Mitchell and Denton were appropriately and adequately trained as to when and under what circumstances to effectuate an arrest and under what circumstances to use deadly force; (2) had a policy, custom, and procedure of not ensuring that officers like Mitchell and Denton were appropriately trained as to when and under what circumstances to obtain medical care for citizens who they would foreseeably encounter; (3) failed to properly train and supervise police officers about proper procedures for arrest and the reasonable use of force; (4) had no guidelines, or wholly inadequate guidelines as to the standard of care specific to an arrestee's physical and mental health; (5) had policies of (i) failing to promulgate, implement or enforce adequate policies responsive to the serious medical and mental health needs of arrestees like Micheal, (ii) untimely medical and mental health examinations and treatment; and (iii) untimely response to emergent medical or mental health crisis; and (6) failed to adequately train and supervise subordinates, including Mitchell and Denton, in how to identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of severe health crisis.  Doc. no 5, ¶¶ 190, 191, 193, 196, 197, 218,  223, and 234.

IV.

As stated, Wood seeks to dismiss plaintiffs' claims against him pursuant to Rule 12(b)(6).  Wood asserts that the First Amended Complaint fails to state plausible § 1983 official capacity claims against him because he does not possess final policymaking authority for the City or its police department.  According to Wood, all policy-making authority for the City is vested in the City Council under the City Charter and state law.  Even if Wood had policy-making authority for the City, he argues the official capacity claims are redundant in light of the claims alleged against the City.  In addition, he asserts that the amended pleading fails to state plausible § 1983 individual capacity claims inasmuch as there are no allegations that he personally participated in the alleged constitutional violations.  He also contends that the amended pleading fails to give him fair notice of what alleged acts or omissions are attributable to him.  According to Wood, the amended pleading makes "broad, conclusory, vague and non-specific, and collective allegations" against defendants and lumps his actions with the City using the "and/or" language. Doc. no. 17, p. 10.  Wood additionally asserts that he is entitled to qualified immunity for the § 1983 individual capacity claims because the First Amended Complaint fails to allege facts demonstrating that he personally participated in the violation of any clearly established constitutional rights.  Lastly, Wood argues that the City is the proper party for the negligence claim under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 163(C), and thus, any claim against him in his official capacity is unnecessary.  He further contends that to the extent the claim is alleged against him individually, he is immune from suit under the Act because plaintiffs specifically allege in their amended pleading that he acted within the scope of his employment.

Plaintiffs, in response, concur that under federal and state law an action against Wood in his official capacity as Chief of Police for the City of Blackwell is

treated as an action against defendant City.  They also represent that the real party in interest from which they can recover a damages judgment for the federal and state law claims is defendant City.  Thus, plaintiffs do not object to the dismissal of the federal and state law claims against Wood, in his official capacity as Chief of Police for the City of Blackwell, on the basis that they are redundant to the claims alleged against defendant City.

As to the § 1983 individual capacity claims, plaintiffs assert that they have alleged facts sufficient to state plausible supervisory liability claims against Wood. They contend they have alleged personal involvement by Wood through his failure to supervise and his utilization of a policy or custom which violated Micheal's constitutional rights.  Plaintiffs argue that they have specifically mentioned Wood by name in their allegations and specifically allege his liability based on his ratification of Denton and Mitchell's actions.  They also contend that they have alleged that Wood failed to (1) train employees on the reasonable use of force; (2) ensure his subordinates followed use of force guidelines, (3) discipline Mitchell and Denton on their uses of excessive force, and (4) establish guidelines as to the standard of care for officers to follow specific to an arrestee's physical and mental health.  Plaintiffs assert that these failures led to the violation of Micheal's constitutional rights and amounted to a deliberate indifference as it was reasonably foreseeable these actions would have led to a constitutional violation.  Further, plaintiffs contend that because they have properly alleged that Wood violated Micheal's constitutional rights and those rights were clearly established, they have met their burden to overcome qualified immunity.

With respect to the state law negligence claim, plaintiffs contend that the question of whether Wood was acting within the scope of his employment is one for the jury.  Although they recognize they have pleaded Wood acted in the scope of his employment, they point out that they have also alleged that his failure to train and

supervise his employees amounted to deliberate indifference to Micheal's constitutional rights, thereby taking Wood outside the scope of his employment. The allegations, plaintiffs contend, support more than one reasonable conclusion about whether Wood was acting within the scope of his employment, and thus, the matter should be left to the jury.

In the event the court finds that plaintiffs have failed to state a plausible federal or state claim against Wood, in his individual capacity, plaintiffs request leave to amend their complaint to correct any deficiency.

Wood, in reply, contends that while plaintiffs now claim in response that his liability is based upon a theory of supervisory liability, the allegations in the First Amended Complaint do not allege liability on this basis. He also asserts that according to plaintiffs' clarification, the basis for the supervisory liability claims is the same as the municipal liability claims – *i.e.*, failure to train, supervise, discipline, "and/or" establish guidelines. Doc. no. 24, p. 4. However, he contends that this is not clear from the amended pleading given the vague and collective nature of the factual allegations, coupled with the fact that those allegations are alleged collectively against him "and/or" the City. *Id*. Plaintiffs fail, according to Wood, to specify which of the unconstitutional acts are attributable to him as opposed to the City. Wood maintains that plaintiffs have not provided sufficient individualized allegations against him. Wood acknowledges that plaintiffs have alleged that he specifically failed to discipline Mitchell or Denton. However, he asserts that under Tenth Circuit authority, a failure to discipline is insufficient to state a plausible claim for supervisory liability. Wood also points out that plaintiffs' allegations of after-the-fact ratification are also insufficient to support a supervisory liability claim. Additionally, he argues that plaintiffs have not alleged he either promulgated or implemented a policy that caused a violation of Micheal's constitutional rights and acted with the state of mind required to establish the alleged constitutional

11

deprivation.  Further, Wood argues that he is entitled to qualified immunity because plaintiffs have not shouldered their burden to show that he violated Micheal's clearly established constitutional rights. Wood asserts that while plaintiffs, in their response, recite broad general propositions concerning the use of force and a detainee's serious medical needs, such broad general propositions are not sufficient to establish clearly established law.  He points out that the Supreme Court has determined that clearly established law cannot be defined at a high level of generality.  Wood further argues that he is immune from the state law claim because the First Amended Complaint expressly alleges that he was acting within the scope of his employment.  Lastly, Wood contends that the court should deny leave to amend request because plaintiffs lack any factual basis to allege supervisory liability claims against him.

## V.

Initially, because plaintiffs do not object to dismissal of the official capacity claims against Wood under § 1983 and state law based upon redundancy, the court concludes that all claims against Wood, in his official capacity as Chief of Police for the City of Blackwell, should be dismissed without prejudice.

## VI.

Turning to plaintiffs' § 1983 claims against Wood in his individual capacity, it is well-established that those claims are subject to the defense of qualified immunity.  "Qualified immunity exists to protect [a] public official[] from the broad-ranging discovery that can be peculiarly disruptive of effective government." Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quotations omitted). Thus, Wood is permitted to appeal from the denial of a motion to dismiss on qualified immunity grounds to spare him from the ordeal of discovery if the complaint fails to allege a constitutional violation or if the alleged violation was not clearly established.  Id. at 1249.

"To nudge their claims across the lines from conceivable to plausible, . . . plaintiffs must allege facts sufficient to show (assuming they are true) that [Wood] plausibly violated [Micheal's] constitutional rights, and that those rights were clearly established at the time. *This requires enough allegations to give [Wood] notice of the theory under which their [claims are] made*." *Id*. (internal quotation omitted) (emphasis added). *"Without allegations sufficient to make clear the 'grounds' on which [plaintiffs are] entitled to relief,"* the court cannot "perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established." *Id*. (emphasis added).

Upon review of the First Amended Complaint, the court concurs with Wood that plaintiff's allegations do not adequately give him notice that plaintiffs' § 1983 claims against him in his individual capacity are based upon supervisory liability. The "Introduction" paragraph of the First Amended Complaint suggests that plaintiffs are seeking to hold Wood liable individually "for the failure to train and supervise subordinate officers" and for "promulgating, creating, and implementing policies, procedures, and customs." Doc. no. 5, p. 3. However, the claims against the City and Wood are set forth in the same counts of the First Amended Complaint – counts II and IV—and plaintiffs sued Wood in both his official and individual capacities. Plaintiffs allege in the amended pleading that "Wood" refers to Wood in both capacities. *Id*. at p. 2. Plaintiffs do not indicate whether the "Wood" allegations mean Wood in his individual capacity, in his official capacity or both. The court recognizes that supervisory and municipality liability can be based upon similar conduct, if the supervisory official is a municipal policymaker, *see*, Burke v. Regalado, 935 F.3d 960, 998 (10th Cir. 2019), but the First Amended Complaint does not make clear that plaintiffs are alleging Wood is policymaker for the City with respect to the alleged conduct. The amended pleading also alleges that Wood was the official policymaker and final decision-maker for the Blackwell Police

Department.  Doc. no. 5, ¶¶ 5, 195.  In the court's view, the First Amended Complaint, as pled, does not make clear the grounds on which plaintiffs claim they are entitled to relief against Wood, in his individual capacity.

Even if supervisory liability claims were properly noticed, the court concludes that the "and/or" references in the First Amended Complaint do not allow "the court to draw the reasonable inference that [Wood, in his individual capacity] is liable for the misconduct alleged."  Waller, 932 F.3d at 1282.  The "or" reference can mean that the City rather than Wood in his individual capacity failed to train, failed to supervise, or had a policy or custom which violated Michael's constitutional rights. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id. at 676.

In addition, plaintiffs contend that they have made allegations of Wood's failure to supervise, train or discipline Mitchell and Denton and that he ratified their specific actions.  However, the amended pleading lacks factual allegations to the effect that Wood had responsibility for the supervision, training or discipline of Mitchell and Denton.  In addition, "[u]nless a supervisor has established or utilized an unconstitutional policy or custom, a plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation."  Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988). Plaintiffs have not cited any state or local law that make Wood responsible for the conduct of Mitchell and Denton.  Further, allegations of post-conduct approval or purported ratification are not sufficient to hold a supervisor liable under § 1983. See, Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009).

Subsequent to the Supreme Court's decision in Ashcroft v. Iqbal, the Tenth Circuit determined that "[a] plaintiff may [] succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010).  Plaintiffs contend they have alleged that Wood utilized policies that resulted in a violation of Michael's constitutional rights.  Even if the factual allegations in the First Amended Complaint could be construed as alleging that Wood, in his individual capacity, utilized certain policies, there are no factual allegations to support that any policy utilized by Wood caused the complained constitutional harms or that Wood acted with the requisite state of mind pled by plaintiffs—deliberate indifference.  The allegations with regard to causation and state of mind are nothing more than conclusions and a formulaic recitation of the elements.  This does not suffice.  Waller, 932 F.3d at 1282.  The court concludes, consequently, that the allegations in the First Amended Complaint do not state plausible supervisory liability claims under § 1983.

Because the allegations in the First Amended Complaint fail to give notice of supervisory liability claims under § 1983 against Wood in his individual capacity and fail to state plausible supervisory liability claims under § 1983, the court concludes that the § 1983 claims against Wood, in his individual capacity, should be dismissed without prejudice based upon qualified immunity.  See, Ellis v. Oliver, 714 Fed. Appx. 847, 851 (10th Cir. 2017) (unpublished decision cited as persuasive pursuant to 10th Cir. R. 32.1(A)).

VII.

As to the individual capacity negligence claim brought under the GTCA, the court also concurs with Wood that dismissal is appropriate.  First, the claim, as pled,

does not indicate that plaintiffs are seeking to hold Wood personally liable based on any alleged negligent act. It only alleges that Mitchell and Denton are personally liable. Additionally, section 163(C) of Title 51 of the Oklahoma Statutes reads in relevant part:

> In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . .

51 O.S. § 163(C).

Plaintiffs, in the First Amended Complaint, expressly allege that "Wood engaged in conduct complained of under the color of the law and within the scope of his employment as agent and representative of Blackwell Police Department and/or City of Blackwell." Doc. no. 5, ¶ 5. They do not make any alternative allegation, similar to the alternative allegations regarding Mitchell and Denton, that Wood was acting outside the scope of his employment. *Id*. at ¶ 252. Although plaintiffs contend that they have alleged in their amended pleading that Wood's failure to train and supervise his subordinate officers amounted to deliberate indifference, the court finds such allegations to be conclusory. The court thus finds that the allegations are not sufficient to establish that Wood was acting outside of the scope of his employment. Consequently, the court finds that the negligence claim brought under the GTCA, to the extent it is alleged against Wood, in his individual capacity, should be dismissed without prejudice.

### VIII.

As stated, in their response, plaintiffs request leave to again amend their complaint to allege more particular facts for any claim the court finds deficient. The court declines to grant the request at this time. The request does not indicate what particular facts could be alleged to overcome dismissal. And plaintiffs do not attach any amended complaint for the court to consider. The court, at the scheduling

16

conference, will set a deadline for filing motions to amend pleadings.  Within that time, plaintiffs may file a motion to amend their pleading in accordance with Rule 15, Fed. R. Civ. P., and LCvR 15.1.

IX.

Accordingly, Defendant Dewayne Wood's Motion to Dismiss (doc. no. 17) is **GRANTED**.

All claims alleged against defendant, Dewayne Wood, in his individual capacity and in his official capacity as Chief of Police for the City of Blackwell, are **DISMISSED WITHOUT PREJUDICE**.  This case shall be set for status and scheduling conference on the next available docket.

IT IS SO ORDERED this 22nd day of February, 2020.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0870p002.docx

17